## UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF PENNSYLVANIA

**IAN MCCABE STUDIO, LLC and IAN MCCABE STUDIO AT UNION MARKET, LLC**

                          **Plaintiffs,**

   **vs.**

**ERIE INSURANCE EXCHANGE**

                          **Defendant.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Ian McCabe Studio, LLC and Ian McCabe Studio at Union Market, LLC ("Plaintiffs') bring this Complaint, alleging against Defendant, Erie Insurance Exchange ("Defendant" or "Erie") as follows:

### I.      NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiffs' contracts of insurance with the Defendant.

2.      In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down, Plaintiffs shut its doors for customers on March 18, 2020.

3.      Plaintiffs' insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4.      As a result, Plaintiffs are entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

### II.      JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiffs and the Defendant.

Further, Plaintiffs have suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6.    This Court has personal jurisdiction over Defendant, Erie because it is headquartered in Pennsylvania. At all relevant times Defendant has engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania and within the Eastern District of Pennsylvania.

### III.    PARTIES

8.    At all relevant times, Plaintiff, Ian McCabe Studio, LLC is authorized to do business in the District of Columbia.  Ian McCabe Studio, LLC owns, operates, manages, and/or controls a salon located at 1101 23rd Street, N.W. Washington, DC 20037.

9.    At all relevant times, Plaintiff, Ian McCabe Studio at Union Market, LLC is authorized to do business in the District of Columbia.   Ian McCabe Studio at Union Market, LLC owns, operates and/or controls a salon at Union Market and does business in the District of Columbia at 1268 5th Street N.E., Washington, DC 20002.

10.    Defendant, Erie Insurance Exchange ("Erie" or "Defendant") is an insurance carrier who provides business interruption insurance to Plaintiffs.  Erie is headquartered at 100 Erie Insurance Place, Erie, Pennsylvania 16530.

11.    At all relevant times, Defendant issued a policy to Ian McCabe Studio at Union Market, LLC from November 12, 2019 up until November 12, 2020.  The policy number is Q97-

1972409.  This policy was intended to cover losses to business interruption.  See Declaration attached hereto as Exhibit 1.

12.     At all times relevant times, Defendant also provided a business loss policy to Ian McCabe Studio, LLC under the policy number Q97-0438519 from May 24, 2019 up until May 24, 2020.  See Declaration attached hereto as Exhibit 2.

13.     The policies are currently in full affect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

14.     Plaintiff, Ian McCabe Studio, LLC submitted a claim for a date of loss of March 18, 2020 pursuant to its policy Q97-0438519 on April 3, 2020 seeking coverage under this policy. Defendant rejected Plaintiff's coverage finding that the Civil Authority Coverage did not apply because Plaintiff did not suffer damage to its property.  Defendant also denied coverage under the Contingent Business Interruption because of lack of damage to the property.

15.     Plaintiff, Ian McCabe Studio at Union Market, LLC also submitted a claim on April 3, 2020 under its policy Q97-1972409 for the above interruption with the date of loss of March 18, 2020.  Defendant rejected this business loss claim as well.  Defendant advised that the Contingent Business Interruption Coverage did not apply because there was no property damage.  The Civil Authority Coverage did not apply because there was no property damage.

IV.     **FACTUAL BACKGROUND**

A.     **Insurance Coverage**

16.     Plaintiffs faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

17.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to

the Insured Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiffs' Insured Properties. This additional coverage is identified as coverage under "Civil Authority."

18.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

19.     Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown.

**B.      The Coronavirus Pandemic**

20.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the salon.

21.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.     Civil Authority**

25.     On March 17, 2020, the Office of the Mayor for the District of Columbia issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the District of Columbia as a result of COVID-19.

26.     On March 17, the District of Columbia announced the closure of non-essential businesses, including salons like the Plaintiffs'.

27.      On March 24, the District of Columbia also issued an order that extended until April 24, 2020 a prohibition against  non-essential businesses from operating.

28.      On April 15, 2020 the District of Columbia extended the public emergency through May 15, 2020 which essentially still prohibits non-essential businesses from operating.

29.     Plaintiffs' businesses are unable to operate due to the stay-at-home orders for public safety issued by the District of Columbia and have submitted a claim to their insurance carrier related to such losses.

30.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiffs:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't

- 11 -

always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

31.   The President is articulating a few core points:

   a.   Business interruption is a common type of insurance.

   b.    Businesses pay in premiums for this coverage and should  reasonably expect they'll receive the benefit of the coverage.

   c.   This pandemic should be covered unless there is a specific exclusion for pandemics.

   d.   If insurers deny coverage, they would be acting in bad faith.

32.   These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**D.   <u>Impact on Plaintiffs</u>**

33.   As a result of the Orders referenced herein, Plaintiffs shut its doors to customers on

March 18, 2020 and continues to be shutdown.

34.     As a further direct and proximate result of the Orders, Plaintiffs have been forced to furlough 32 employees.

35.     Prior to March 18, 2020, Plaintiffs were opened as follows:

**Ian McCabe Studio, LLC**
- Tuesday 11-7
- Wednesday 8-5
- Thursday 11-7
- Friday 8-5
- Saturday 9-4

**Ian McCabe Studio at Union Market, LLC**
- Tuesday 10-7
- Wednesday 10-7
- Thursday 11-8
- Friday 10-6
- Saturday 9-5

36.     Plaintiffs' businesses are not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the studios, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated.

37.     Businesses like the Plaintiffs' are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer as compared to a facility with open-air ventilation.

38.     Plaintiffs' businesses are also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

39.     The virus is physically impacting Plaintiffs. Any effort by the Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiffs and the public.

40.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiffs from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary.  As a result of these Orders, Plaintiffs have incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**V.     CAUSE OF ACTION
DECLARATORY RELIEF**

41.     Plaintiffs re-allege and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

42.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

43.     An actual controversy has arisen between Plaintiffs and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiffs contends and, on information and belief, the Defendant disputes and denies that:

      a.     The Orders constitute a prohibition of access to Plaintiffs' Insured Properties;

      b.     The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

      c.     The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here.

      d.     The Orders trigger coverage;

      e.     The Policy provides coverage to Plaintiffs for any current and future civil authority closures of business in the District of Columbia due to physical loss or damage directly or indirectly from the Coronavirus under the Civil

- 11 -

Authority coverage parameters;

    f.    The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

    g.    Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

44.    Plaintiffs seek a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiffs' Insured Properties as Civil Authority as defined in the Policy.

45.    Plaintiffs further seek a Declaratory Judgement to affirm that the Order triggers coverage.

46.    Plaintiffs further seek a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future Civil Authority closures of businesses in the District of Columbia due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Properties.

47.    Plaintiffs do not seek any determination of whether the Coronavirus is physically in or at the Insured Properties, amount of damages, or any other remedy other than declaratory relief.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs herein prays as follows:

1)    For a declaration that the Orders constitute a prohibition of access to Plaintiffs' Insured Properties.

2)    For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3)    For a declaration that the Orders trigger coverage under the Policy.

4)    For a declaration that the Policy provides coverage to Plaintiffs for any current, future and

continued civil authority closures of businesses in the District of Columbia due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5)      For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiffs' Insured Properties or the immediate area of the Plaintiffs' Insured Properties.

6)      For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: April 21, 2020                            Respectfully submitted,


                                                */s/ Daniel C. Levin*
                                                Arnold Levin, Esq.
                                                Laurence Berman,Esq.
                                                Frederick Longer, Esq.
                                                Daniel Levin, Esq.
                                                **LEVIN SEDRAN & BERMAN LLP**
                                                510 Walnut Street, Suite 500
                                                Philadelphia, PA 19106-3697
                                                Telephone: (215) 592-1500
                                                alevin@lfsblaw.com
                                                flonger@lfsblaw.com
                                                dlevin@lfsblaw.com

                                                Richard M. Golomb, Esq.
                                                Kenneth J. Grunfeld, Esq.
                                                **GOLOMB & HONIK, P.C.**
                                                1835 Market Street, Suite 2900
                                                Philadelphia, PA 19103
                                                Telephone: (215) 985-9177
                                                Facsimile: (215) 985-4169
                                                rgolomb@golombhonik.com
                                                kgrunfeld@golombhonik.com

                                                Aaron Rihn, Esq.
                                                **ROBERT PIERCE & ASSOCIATES**
                                                707 Grant Street, Suite 125
                                                Pittsburgh, PA 15219
                                                Telephone: (412) 281-7229
                                                Facsimile: (412) 281-4229

                                                ***Counsel for Plaintiffs***